NICHOLAS C. HARBIST (NCH-7014)
BLANK ROME LLP
A Pennsylvania LLP
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
(609) 750-2991 (phone)
(609) 897-7442 (fax)
harbist@blankrome.com

*Attorney for Plaintiff*
*Laurel Manufacturing, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAUREL MANUFACTURING, INC., <br><br> Plaintiff, <br><br> v. <br><br> MSL PRODUCTIONS, LLC, UNION SQUARE SPORTS AND ENTERTAINMENT, CORP., MSL SPORTS AND ENTERTAINMENT, LLC, AND GARY CIOFFI <br><br> Defendants. | Civil Action No. 08-cv-06317 (NLH) <br><br> Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

Plaintiff Laurel Manufacturing, Inc., by and through its attorneys, Blank Rome LLP, a Pennsylvania LLP, avers as follows:

## PARTIES

1. Plaintiff Laurel Manufacturing, Inc. ("Laurel" or "Laurel Manufacturing") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 620 Cooper Street, Delanco, New Jersey, 08075.

2. Defendant MSL Productions, LLC ("MSL Productions") was a corporation organized and existing under the laws of New York, with its principal place of business located at 24 32 Union Square East, New York, New York 10003. MSL Productions, LLC has ceased operations.

3. Defendant MSL Sports and Entertainment, LLC ("MSL Sports") was a corporation organized and existing under the laws of New York, with its principal place of business located at 24 32 Union Square East, New York, New York 10003.

4. Defendant Union Square Sports and Entertainment, Corp. ("USSE") is a corporation organized and existing under the laws of New York, with its principal place of business located at 24 32 Union Square East, New York, New York 10003.

5. Defendant Gary Cioffi is a citizen of the state of New York and resides at 21 Serenite Lane, Syosset, NY 11791.

6. At all time relevant hereto, Defendant Cioffi was the President of Defendant MSL Productions and CEO of MSL Sports and USSE.

7. In his position as President of MSL Productions, Defendant Cioffi had full authority to sign corporate checks and had full access to the books and records of the company, including all accounting records.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the action is between citizens of a State and citizens or subjects of a foreign state.

9. At all time relevant hereto, Plaintiff Laurel maintained an office at 620 Cooper Street, Delanco, New Jersey, 08075. The business transactions as set forth below were

transacted through Plaintiff Laurel's New Jersey office. The venue of this action is therefore properly laid in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

10. Plaintiff Laurel is in the business of millwork, metalwork, and general fabrication of custom millwork and cabinets.

11. On or about May 18, 2006, Defendant MSL Productions began submitting purchase orders to Laurel's office in Delanco, New Jersey for the purchase and delivery of products relating to the Nine West and PrAna projects. Plaintiff Laurel shipped the items manufactured pursuant to Defendant MSL Productions' orders. These orders had payment terms of net 30 days.

12. Since May 2006, Plaintiff Laurel and Defendant MSL Productions have entered into numerous contracts for other projects. The outstanding invoices due on these projects add up to $437,122.42.

| Date | Invoice No. | Price (U.S. Dollars) |
|---|---|---|
| 05/17/07 | 17061 | $ 26,436.91 |
| 05/18/07 | 17076 | $370,697.00 |
| 05/18/07 | 17083 | $ 2,590.00 |
| 06/08/07 | 17223 | $ 411.00 |
| 07/17/07 | 17585 | $ 10,367.80 |
| 07/17/07 | 17592 | $ 123.21 |
| 08/16/07 | 17907 | $ 21,916.00 |
| 08/16/07 | 17910 | $ 4,580.50 |

13. Despite passage of more than 30 days and numerous demands, Defendant MSL Productions failed to remit payment to Plaintiff Laurel in the amount of $437,122.42 for the products shipped.

14. On July 24, 2007, a check issued by Defendant MSL Productions for $16,655 bounced.

15. On August 21, 2007, Laurel's President spoke with Defendant Cioffi to discuss the outstanding balance owed to Plaintiff Laurel, in the amount of $529,122.42, for all projects between Plaintiff Laurel and Defendant MSL Productions and the shipment of products for the PrAna project.

16. During this conversation, Defendant Cioffi represented to Plaintiff Laurel that Laurel would receive three checks, all to be applied to Defendant MSL Productions' outstanding balance:

    (a) One check, for $80,000, which was cashed on August 22, 2007.

    (b) One check, for $50,000, was to be held for deposit by Laurel until August, 31, 2007.

    (c) One check, for $50,000, was to be held for deposit by Laurel until September 14, 2007.

Defendant Cioffi also agreed to forward an additional $100,000 to Plaintiff Laurel once Defendant MSL Productions received $100,000 due from Jones Apparel Group, Inc. ("Jones Apparel") for the Nine West project.

17. In reliance on Defendant Cioffi's representations, as well as the presentation of the checks in Paragraph 16, Plaintiff Laurel agreed to ship products for the Comcast and PrAna projects that were being held as a result of the unpaid balance.

18. Defendant Cioffi also offered Plaintiff Laurel another project (the Scholastic II project), provided that the Scholastic II project would not be affected "in the event that the payments [for outstanding balances on other projects] are not exactly what you would prefer at the time."

19. On or about August 30, 2007, and several days thereafter, Plaintiff Laurel contacted Defendant MSL Productions' bank to verify availability of funds. Plaintiff Laurel was told by the bank that there were insufficient funds available to cover either of the checks; the bank would not advise Plaintiff Laurel if stop-payments had been issued. After about a week of repeatedly calling Defendant MSL Productions' bank, the bank refused to give Plaintiff Laurel any further information about Defendant MSL Productions' account.

20. When Plaintiff Laurel found out about the bad checks, Laurel repeatedly called Defendant Cioffi regarding the availability of funds for the $50,000 checks.

21. On September 12, 2007, Defendant Cioffi and representatives of Plaintiff Laurel met with Jones Apparel. Defendant Cioffi told Jones Apparel that all future payments due and owing for the project should be paid directly to Plaintiff Laurel. Defendant Cioffi also told Jones Apparel that shipments for the Nine West project would not be delayed because the Defendant MSL Productions would make good on its debt to Plaintiff Laurel.

22. In the parking lot, after the meeting with Nine West, Defendant Cioffi represented to Plaintiff Laurel that he would forward all monies thereafter due and received from Jones Apparel directly to Plaintiff Laurel to pay Defendant MSL Productions' outstanding balance. Defendant Cioffi acknowledged that he did not have available funds at the time to cover the two $50,000 checks previously described in Paragraph 16. Defendant Cioffi represented to Plaintiff Laurel that he would issue Laurel another check within the next week for $50,000 to begin to pay down the existing debt MSL Productions owed Plaintiff Laurel, and the parties would agree to handle the Nine West account and would agree to allocate commissions.

23. In reliance on these representations, Plaintiff Laurel released product for Jones Apparel projects that was being held as a result of MSL Productions' unpaid balance.

24. On September 19, 2007, Defendant Cioffi confirmed that he had sent a check to MSL Productions for $12,000, to be applied to MSL Productions' outstanding balance. Plaintiff Laurel received that check on September 24, 2007.

25. In the September 19, 2007 e-mail, Defendant Cioffi admitted that he cancelled the $50,000 checks so that he would not have a check bounce for insufficient funds. Cioffi also represented that Plaintiff Laurel would receive between $80,000 and $110,000 from Jones Apparel by the following week.

26. On October 12, 2007, Plaintiff Laurel emailed Defendant Cioffi, asking why there had still been no resolution on MSL Productions' outstanding balance, as Plaintiff Laurel had not received any funds from Jones Apparel or directly from MSL Productions.

27. Plaintiff Laurel received no response from Defendant Cioffi.

28. Plaintiff Laurel continued its attempts to contact Defendant Cioffi to determine whether MSL Productions would pay the amount owed to Plaintiff Laurel for all of the MSL projects.

29. Since September 24, 2007, Plaintiff Laurel received no money directly from Defendant MSL Productions for the remainder of MSL Productions' outstanding balance.

30. Plaintiff Laurel is currently owed $437,122.42, less any amounts Plaintiff Laurel received in mitigation of its damages.

## COUNT ONE

### ACTION FOR PRICE

31. The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

32. In accordance with the agreed upon terms of the contract, Laurel Manufacturing provided services to MSL Productions.

33. Plaintiff Laurel Manufacturing did not receive payment for those services.

34. Plaintiff Laurel Manufacturing made numerous subsequent agreements with MSL Productions to payback the money owed on all of the MSL Productions projects.

35. Defendant MSL Productions has breached the terms of these subsequent agreements and has yet to make good on its outstanding balance.

36. The total price owed by Defendant MSL Productions for the services delivered is $437,122.42.

37. Defendant MSL Productions is liable to Laurel pursuant to N.J.S.A. § 12A:2-709(1)(a) for the price of the goods accepted.

WHEREFORE, Plaintiff Laurel demands judgment against Defendant MSL Productions, LLC for the price of the services Laurel has provided for all of MSL Productions' projects, totaling $437,122.42, incidental damages, attorney's fees, costs of suit, and such other relief as may be appropriate under the circumstances.

## COUNT TWO

### ACCOUNT STATED

38. The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

39. Plaintiff Laurel demanded payment from MSL Productions in the form of invoices totaling $437,122.42.

40. Defendant MSL Productions never disputed the value of the services as stated on the invoices.

41. Although demanded, MSL Productions has paid no part of the sums stated on the invoices.

WHEREFORE, Plaintiff Laurel demands judgment against Defendant MSL Productions for the price of the invoices totaling $437,122.42, incidental damages, attorney's fees, costs of suit, and such other relief as may be appropriate under the circumstances.

## COUNT THREE
## (Against Defendant Cioffi)

### COMMON LAW FRAUD

42. Plaintiff Laurel incorporates by reference the previous allegations as set forth fully at length herein.

43. Defendants MSL Productions and Cioffi fraudulently made material misrepresentations of facts, that is, that the two $50,000 checks had sufficient funds upon deposit when, in fact, Defendant Cioffi well knew that there were insufficient funds in the bank account to cover those checks, and that he intended to issue stop payment orders for those checks.

44. Plaintiff Laurel reasonably and justifiably relied on these material misrepresentations by releasing products for other MSL Productions projects.

45. Plaintiff Laurel suffered damages based on MSL Productions' and Cioffi's fraudulent conduct.

**WHEREFORE,** Plaintiff Laurel Manufacturing demands judgment against Defendant Cioffi and MSL Productions for damages in excess of $437,122.42 and punitive damages, together with interest, costs, attorney's fees and such other relief as this Court deems equitable and proper.

## COUNT FOUR
### (Against Defendants Cioffi, MSL Sports and Entertainment, LLC and Union Square Sports and Entertainment, Corp.)

### (Alter Ego / Veil Piercing)

46. Plaintiff incorporates by reference the previous allegations as set forth fully at length herein.

47. Defendant Cioffi is a self proclaimed "leader in the creative and production arenas." Defendant Cioffi established and operated MSL Productions, MSL Sports, and USSE.

48. Defendant MSL Productions was a marketing and event management company, which is no longer in business. In or about the beginning of 2008, MSL Productions was reformed into MSL Sports, a marketing and event management business focused on sporting events. In or about the end of 2008, MSL Sports transferred its assets to Union Square Sports and Entertainment, Inc. In June 2009, Union Square Sports and Entertainment Inc. was purportedly sold to USSE, a marketing agency focused on the entertainment and sports industries.

49. MSL Productions, MSL Sports, and USSE operate the same line of business. MSL Productions branded itself as "build[ing] and develop[ing] cutting-edge entertainment properties with the purpose of connecting consumers, brands and media." MSL Sports branded itself as "build[ing] and develop[ing] cutting-edge sports and entertainment properties with the purpose of connecting consumers, brands and media." USSE brands itself as "producing turn key entertainment based large scale events with an emphasis on college sports."

50. MSL Sports, MSL Productions, and USSE were or are owned and controlled by Defendant Cioffi.

51. Defendant Cioffi was the majority shareholder and President of MSL Productions; the majority shareholder and CEO of MSL Sports; and is currently the CEO of USSE.

52. Defendant Cioffi exercised control over the affairs of MSL Productions and MSL Sports, and exercises control over the affairs of USSE.

53. Defendant Cioffi personally guaranteed MSL Productions' line of credit.

54. MSL Sports', MSL Productions' and USSE's entity status are a mere formality -- Cioffi intermingled and otherwise manipulated their respective assets and liabilities.

55. Ultimately, Cioffi closed MSL Productions and reformed its business into MSL Sports, in part, to thwart the MSL Productions' legitimate debts. After MSL Productions ceased operations, other vendors of MSL Productions were directed to bill MSL Sports for debts owed by MSL Productions.

56. Income and payments made to MSL Production were used to operate MSL Sports. In addition to commingling finances, MSL Productions and MSL Sports simultaneously shared employees, and USSE shows many of the same employees as MSL Productions and MSL Sports.

57. MSL Productions, MSL Sports, and USSE all operated, and currently operate, from the same principal place of business -- 24 32 Union Square East, New York, New York 10003.

58. MSL Productions, MSL Sports, and USSE all shared business ideas and property. For example, press releases from 2007 show that MSL Productions created and produced "Gridiron Bash," live concerts held during college sporting events. In 2008, MSL Sports issued press releases in which MSL Sports claimed to be the producer of "Gridiron Bash." Press

releases from late 2008 and early 2009, with Gary Cioffi as the press contact, state that USSE was the successor in interest to "Gridiron Bash," which was originally a MSL Productions asset.

59. Defendants Gary Cioffi, MSL Sports, MSL Productions, and USSE are alter egos or mere instrumentalities of one another.

60. To avoid an injustice, the corporate veil should be pierced and Cioffi, MSL Sports, and USSE should be held liable for all claims against MSL Productions.

WHEREFORE, Plaintiff Laurel Manufacturing demands judgment against Defendant Cioffi, MSL Sports and Entertainment, LLC and Union Square Sports and Entertainment, Corp. for damages in excess of $437,122.42 and punitive damages, together with interest, costs, attorney's fees and such other relief as this Court deems equitable and proper.

BLANK ROME, LLP

/s/ Nicholas C. Harbist
NICHOLAS C. HARBIST (NCH-7014)
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
(609) 750-2991 (phone)
(609) 897-7442 (fax)
harbist@blankrome.com

*Attorney for Plaintiff*
*Laurel Manufacturing, Inc.*

Dated: October 20, 2009

## **CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I certify that the matter in controversy in this action is not the subject of any other action pending in any Court, or of any pending arbitration or administrative proceeding.

/s/ Nicholas C. Harbist
NICHOLAS C. HARBIST (NCH-7014)
New Jersey Resident Partner
BLANK ROME LLP
A Pennsylvania LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-2991 (phone)
(609) 897-7442 (fax)
*Attorney for Plaintiff*
*Laurel Manufacturing, Inc.*

Dated: October 20, 2009