**BLANK ROME LLP**
*A Pennsylvania LLP*
NICHOLAS C. HARBIST
New Jersey Resident Partner
301 Carnegie Center/ 3rd Floor
Princeton, NJ 08540
Telephone: (609) 750-2991
Fax: (609) 897-7442
*Attorneys for Plaintiff Medlaurel, Inc.*
*d/b/a Laurel Manufacturers, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEDLAUREL, INC. D/B/A/ LAUREL MANUFACTURERS, INC.,<br><br>                              Plaintiff,<br><br>    v.<br><br>MSL PRODUCTIONS, LLC, USSE CORP., UNION SQUARE SPORTS AND ENTERTAINMENT, INC., MSL SPORTS AND ENTERTAINMENT, LLC, AND  GARY CIOFFI,<br>                              Defendants. | Civil Action No. 08-cv-06317 (KMW)(NLH)<br><br><br>**DECLARATION OF NICHOLAS C. HARBIST IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT** |

I, Nicholas C. Harbist, Esquire, of full age, hereby declare as follows:

1.       I am a partner with the law firm of Blank Rome LLP, a Pennsylvania LLP, attorneys for Plaintiff, Medlaurel, Inc. d/b/a Laurel Manufacturers, Inc. ("Laurel"), in the above-captioned matter.  I am familiar with the facts of this case and make this Declaration in support of Plaintiff's Motion for Leave to Amend its Complaint pursuant to F.R.C.P. 15(a).

2.       Laurel filed its initial Complaint in this matter on December 24, 2008.

3.       Laurel filed its First Amended Complaint on October 20, 2009.

4.       Discovery has ended and a trial date is set for April 2, 2012.

5.      Laurel seeks to conform its Complaint to the evidence adduced in discovery by filing its Second Amended Complaint.

6.      Our adversary, Saul Steinberg, consents to the filing of Laurel's Second Amended Complaint.

7.      A true and correct copy of Laurel's proposed Second Amended Complaint is attached hereto as Exhibit "A."

8.      Pursuant to Local Civil Rule 7.1(d)(4), I respectfully submit that a brief is not necessary for this motion.

I declare that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.


                                        /s/ Nicholas C. Harbist
Dated: January 24, 2012                 **BLANK ROME LLP**
                                        *A Pennsylvania LLP*
                                        NICHOLAS C. HARBIST
                                        New Jersey Resident Partner
                                        301 Carnegie Center/ 3rd Floor
                                        Princeton, NJ 08540
                                        Telephone: (609) 750-2991
                                        Fax: (609) 897-7442
                                        *Attorneys for Plaintiff Medlaurel, Inc.*
                                        *d/b/a Laurel Manufacturers, Inc.*

# EXHIBIT A

130731.00601/50416461v.1

**BLANK ROME LLP**
*A Pennsylvania LLP*
NICHOLAS C. HARBIST
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
(609) 750-2991 (phone)
(609) 897-7442 (fax)
harbist@blankrome.com
*Attorney for Plaintiff Medlaurel, Inc. d/b/a Laurel Manufacturers, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEDLAUREL, INC. D/B/A/ LAUREL MANUFACTURERS, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>MSL PRODUCTIONS, LLC, USSE CORP., UNION SQUARE SPORTS AND ENTERTAINMENT, INC., MSL SPORTS AND ENTERTAINMENT, LLC, AND GARY CIOFFI,<br><br>                                    Defendants. | Civil Action No. 08-cv-06317 (NLH)<br><br>Jury Trial Demanded |

## SECOND AMENDED COMPLAINT

Plaintiff, Medlaurel, Inc. d/b/a Laurel Manufacturers, Inc. ("Laurel"), by and through its attorneys, Blank Rome LLP, a Pennsylvania LLP, avers as follows:

## NATURE OF THE ACTION

1.      Laurel brings this action against Defendants Gary Cioffi, MSL Productions, LLC, MSL Sports and Entertainment, LLC and Union Square Sports and Entertainment, Inc., and USSE Corp. to recover, among other damages, $449,135.80 it is owed for work it performed for Defendant MSL Productions.  Laurel also brings this action to recover damages arising from

130731.00601/50416461v.1

Defendant MSL Productions' and Defendant Gary Cioffi's fraudulent misrepresentations and promises, as well as passing bad checks, which were made to induce Laurel to continue shipping its products without receiving payment.

2.      Defendant MSL Productions hired Laurel to manufacture millwork products for several customer projects.   After Laurel began shipping the products MSL Productions ordered to MSL Productions' customers, Defendant Cioffi made multiple misrepresentations to Laurel regarding the status of its customers' payments and MSL Productions' ability to pay Laurel. Defendant Cioffi made these misrepresentations in order to avoid paying Laurel and to persuade Laurel to continue shipping its products to MSL Productions' customers.

3.      Unbeknownst to Laurel, during the course of these misrepresentations, Defendant Cioffi and Defendant MSL Productions had received substantial payments from MSL Productions' customers and, instead of paying Laurel for work it performed for MSL Productions, they were using those receivables to fund projects for MSL Sports and Entertainment, LLC, another entity, and a project known as Gridiron Bash.  Laurel relied on Defendant Cioffi's and Defendant MSL Productions' misrepresentations and continued to ship its products to MSL Productions' clients under the good faith belief that Laurel would be fully paid by MSL Productions for its work.

4.      Ultimately, Defendant Cioffi and Defendant MSL Productions did not fully pay Laurel, as represented, and defrauded Laurel of funds due and owing in the amount of $449,135.80.

5.      MSL Productions, LLC, MSL Sports and Entertainment, LLC, USSE Corp. and Union Square Sports and Entertainment, Inc. were all used and controlled by Gary Cioffi and were alter egos of one another.

<u>PARTIES</u>

6.     Plaintiff Medlaurel, Inc. d/b/a Laurel Manufacturers, Inc.  ("Laurel") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 620 Cooper Street, Delanco, New Jersey 08075.

7.     Defendant MSL Productions, LLC ("MSL Productions") was a limited liability company organized and existing under the laws of New York, with its principal place of business located at 24 32 Union Square East, New York, New York 10003.  MSL Productions ceased operations in or about October 2007.

8.     The following individuals were members of MSL Productions: Gary Cioffi, Shawn Garrity, Laurence Rosenberg and SDI Enterprises, a New York limited liability company.

9.     Gary Cioffi, Shawn Garrity and Laurence Rosenberg are residents of the State of New York and are domiciled in New York and, therefore, are citizens of New York.

10.    SDI Enterprises is a New York limited liability company, comprised of members William Abbate and Ronald Abbate.   William Abbate is a resident of Florida and is domiciled there.   Ronald Abbate is a resident of the State of New York and is domiciled there. Accordingly, they are citizens of Florida and New York, respectively.

11.    MSL Sports and Entertainment, LLC ("MSL Sports") is a New York limited liability company comprised of members:  Shawn Garrity, Gary Cioffi, Laurence Rosenberg, Michael Anastasio and Michael Visconti.  All of the members reside in New York and are domiciled in the State of New York and, therefore, are citizens of the State of New York.

12.    Defendant USSE Corp., formerly C&A Restaurants, Inc., is a corporation organized and existing under the laws of Nevada, with its principal place of business located at 24 32 Union Square East, New York, New York 10003.

13.     Defendant Union Square Sports and Entertainment, Inc. is a corporation organized and existing under the laws of New York, with its principal place of business located at 24 32 Union Square East, New York, New York 10003.

14.     Defendants USSE Corp. bought and Union Square Sports and Entertainment, Inc. in 2009, but are both still active entities, operating primarily, but not exclusively, under the name USSE Corp.  (USSE Corp. and Union Square Sports and Entertainment, Inc. are collectively referred to herein as "the USSE Defendants").

15.     Defendant Gary Cioffi ("Cioffi") is a citizen of the state of New York and resides at 543 Hunter Lane, Oyster Bay, New York 11771-4603.

16.     At all times relevant hereto, Defendant Cioffi was President of Defendant MSL Productions.

17.     At all times relevant hereto, Defendant Cioffi was Chief Executive Officer of MSL Sports and the USSE Defendants.

<u>JURISDICTION AND VENUE</u>

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the action is between a citizen of this state and citizens or subjects of a foreign state.

19.     At all time relevant hereto, Plaintiff Laurel maintained an office at 620 Cooper Street, Delanco, New Jersey 08075.  The business transactions as set forth below were transacted through Plaintiff Laurel's New Jersey office.  The venue of this action is therefore properly laid in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

130731.00601/50416461v.1

<u>FACTS</u>

20.     Plaintiff Laurel is in the business of millwork, metalwork, and general fabrication of custom millwork and cabinets.

21.     On or about May 18, 2006, Defendant MSL Productions began submitting purchase orders to Laurel's office in Delanco, New Jersey for the purchase and delivery of millwork products relating to a project for Jones Apparel Group ("JNY"), involving Jones New York stores and Nine West ("9W") stores, as well as projects for Comcast and PrAna.  These orders had payment terms of net 30 days.

22.     Plaintiff Laurel shipped the items manufactured pursuant to Defendant MSL Productions' orders directly to MSL Productions' customers.

23.     MSL Productions received payments from JNY and Comcast for the products manufactured by Plaintiff Laurel, but used these payments to fund its division, MSL Sports, as well as a new project known as the Gridiron Bash.

24.     Even though Defendant MSL Productions was not paying Plaintiff Laurel, Defendant Gary Cioffi and Defendant MSL Productions needed Plaintiff Laurel to continue manufacturing and shipping products for MSL Productions' customer projects.

25.     As a means of persuading Plaintiff Laurel to continue manufacturing and shipping its products without receiving payment from Defendant MSL Productions, Defendant Cioffi misrepresented the status of its receipt of funds from Jones Apparel Group to Plaintiff Laurel and fraudulently promised payment to Laurel of all monies MSL Productions owed it.

26.     On or about December 1, 2006, Cioffi represented that MSL Productions would pay Laurel $182,500.00 on January 15, 2007 and $182,500.00 on February 15, 2007 as deposits for the JNY "A" store project.

27.     MSL Productions received $813,278.40 in receivables from JNY for the "A" store project between December 1, 2006 and February 15, 2007, but MSL Productions neither paid Laurel $182,500.00 on January 15, 2007, nor did it pay Laurel $182,500.00 on February 15, 2007.

28.     Instead of paying Laurel for the work it performed, as agreed, MSL Productions gave Gary Cioffi a $150,000 loan on January 10, 2007, paid $75,000 on February 1, 2007 for rapper Snoop Dogg to perform at Penthouse party thrown by MSL Sports, and made $423,873.01 in credit card payments to fund the expenses of MSL Sports and the Gridiron Bash between December 1, 2006 and February 15, 2007.

29.     By March 29, 2007, MSL Productions had paid Laurel just $200,000.00 instead of the $365,000.00 Laurel was due under its agreement with MSL Productions.  Also by March 29, 2007, Laurel had shipped products to JNY and 9W and Defendant MSL Productions owed Plaintiff Laurel $558,389.72.

30.     In response to Laurel's inquiries regarding MSL Productions' overdue balance, on March 29, 2007, Defendant Cioffi misrepresented that Defendant MSL Productions "was having delays collecting from 9W", when, in fact, Defendant MSL Productions had received $855,960.84 of $1,437,591.00 due from JNY for the "A" store project prior to this date.  (The parties referred to Jones Apparel Group interchangeably as JNY and 9W, because Nine West is a Jones Apparel Group division.)

31.     On May 3, 2007, Defendant MSL Productions received a $78,419.47 payment from JNY.

32.     The next day, and despite a debt of over $600,000.00 to Plaintiff Laurel, Defendant Cioffi misrepresented to Laurel that Defendant MSL Productions could not pay

9

Plaintiff Laurel and that he had assigned all Defendant MSL Productions' receivables from JNY to Plaintiff Laurel: "I understand your cash position and assure you that we are in a can't not won't pay position at this time or we would gladly make another payment against 9W . . . . I have assigned all [9W's] receivables to you. . . ."

33.     In fact, on May 4, 2007, Defendant MSL Productions had over $250,000 in its North Fork bank account – more than enough money to make a payment to Plaintiff Laurel – and had received over $970,000 from JNY for the "A" store project prior to this date.

34.     In addition, contrary to Cioffi's representations that he had assigned all JNY receivables to Laurel, Defendant MSL Productions did not forward to Laurel any of the $78,419.47 payment it received from JNY the previous day.

35.     Rather than paying Plaintiff Laurel or forwarding the payment from JNY, on May 4, 2007, Defendant MSL Productions made a $124,670.97 payment to its American Express account, which it was using to fund MSL Sports and Gridiron Bash.

36.     On May 8, 2007, Defendant MSL Productions received $47,244.92 from JNY, but did not forward these "assigned" receivables to Plaintiff Laurel, as represented in Defendant Cioffi's May 4, 2007 email.

37.     Defendant Cioffi made these misrepresentations because he knew that if Laurel's President was aware that Defendant MSL Productions had been paid for these products by JNY, but had not paid Plaintiff Laurel the $608,571.24 it still owed it as of May 15, 2007, that Plaintiff Laurel would cease shipping products to Defendant MSL Productions' clients until it received payment.

38.     Defendant Cioffi continued the façade that Defendant MSL Productions was not being paid by JNY in order to induce Plaintiff Laurel to continue shipping additional products to Defendant MSL Productions' clients.

39.     On or about May 15, 2007, Defendant Cioffi emailed Jean Koeppel, another Defendant MSL Productions employee, and copied Laurel's President, to request that Koeppel finish all of Defendant MSL Productions' invoicing to JNY so that Defendant MSL Productions could get paid.

40.     At Defendant Cioffi's direction, MSL Productions' bookkeeper created two false invoices, numbered 1690 and 1691, dated May 16, 2007, to incorrectly reflect that MSL Productions had just invoiced JNY and that MSL Productions was owed an additional $520,882.91 for these invoices from JNY.

41.     On June 20, 2007, MSL Productions provided a report of JNY's unpaid invoices to Laurel via email which reflected that MSL Productions had not been paid by JNY for invoices 1690 and 1691.

42.     In fact, on June 20, 2007, only about $150,000 was left for Defendant MSL Productions to invoice JNY, approximately $74,000 of which was for the "A" store project.  JNY had already paid Defendant MSL Productions over $1,550,000 for the bulk its work.

43.     Because MSL Productions had already been paid by JNY for its work, immediately after creating invoices 1690 and 1691 it issued a credit memo to JNY for the exact same amount invoiced in 1690 and 1691, thus cancelling out the balance owed for these invoices.

44.     By providing invoices 1690 and 1692 to Laurel on June 20, 2007, Defendant Cioffi fraudulent intended for Laurel to falsely believe that Defendant MSL Productions had just

invoiced JNY for the products and services contained in invoice numbers 1690 and 1691, on May 16, 2007, and that, consequently, JNY had not paid Defendant MSL Productions for its work and products.

46. Defendant Cioffi responded to Laurel by email and advised that JNY had agreed "to pay for everything in full" in the next two weeks. Defendant Cioffi further implored that it would be a "mistake" for Plaintiff Laurel to hold the shipment of goods to Defendant MSL Productions' customers. Defendant Cioffi stated that "we do not have the money right now. Without payment from 9W we cannot make a payment to you."

47. But, in truth, Defendant MSL Productions had been receiving regular payments from JNY, totaling over $1,560,000, and had received a payment of $13,923.05 from JNY that same day. MSL Productions did not turn over those funds to Laurel, pursuant to the assignment of receivables. Instead, on May 30, 2007, MSL Productions paid Laurel only $5,500.00 and, on June 5, 2007, MSL Productions paid Laurel $3,490.00.

48. Defendant Cioffi made these misrepresentations to Laurel so that it would believe that an imminent payment from JNY would be made to Defendant MSL Productions, based on invoices 1690 and 1691, which MSL Productions had already credited back to itself so that Plaintiff Laurel would believe it would be made whole.

49. On June 26, 2007, Defendant Cioffi forwarded Laurel an email he purportedly sent to JNY following up on a list over "long overdue invoices" – including invoice 1690 and

45. On or about May 29, 2007, Laurel emailed Defendant Cioffi to demand that Defendant MSL Productions pay down some of its debt to Plaintiff Laurel before Plaintiff Laurel shipped additional goods to a Defendant MSL Productions customer.

12

1691.  In truth, most of the invoices Cioffi claimed were long overdue had either been credited back to MSL Productions, and thus not owed, or were less than 30 days old.

50.     Based on Defendant Cioffi's misrepresentations, Plaintiff Laurel continued to ship products to Defendant MSL Productions' customers.

51.     On or about July 20, 2007, Cioffi again made false representations and promises to Laurel he could not -- and did not -- keep to induce Laurel to continue working with MSL Productions.

52.     On that day, Cioffi emailed Laurel's President and stated that MSL Productions had "secured a long term equity investor" and that "some bridge loans [were] being put in place until [our] agreements are finalized and we are completely funded."  Cioffi represented that the bridge loan would begin the next week.

53.     For this reason, Cioffi further represented that "next week we will send you $25k towards the balance.  Also, I will send you an e-mail every Wednesday notifying you of the amount I will be sending you out (sic) on Friday each week."

54.     Cioffi further added that if Laurel was "not completely paid in full" within the next 60 to 90 days "we will send you a payment for the balance."

55.     MSL Productions did not make a $25,000.00 payment to Laurel in the next week or at any time in the first weeks of August 2007 and did not email Laurel every Wednesday to notify Laurel of the amount MSL Productions would pay Laurel that week.

56.     Because of these false representations and promises, on or about August 21, 2007, Laurel advised MSL Productions that it was ceasing shipments to MSL Productions' clients due to its unpaid balance of $529,122.42, for all projects between Plaintiff Laurel and Defendant MSL Productions.

57.     On the evening of August 21, 2007, Plaintiff Laurel's President spoke with Defendant Cioffi to discuss the outstanding balance owed to Plaintiff Laurel.

58.     During this conversation, Defendant Cioffi made further misrepresentations to Laurel.

59.     First, Cioffi represented that Defendant MSL Productions did not, at that time, have enough money to cover a payment of $180,000 to Plaintiff Laurel, but that MSL Productions was going to receive additional client payments shortly, when, in truth, at the time of the August 21, 2007 conversation, MSL Productions had $214,302.38 in its North Fork checking account.

60.     During this conversation, Defendant Cioffi agreed to send Plaintiff Laurel $180,000 in three checks, all to be applied to Defendant MSL Productions' outstanding balance:

   a)     One check, for $80,000, which was cashed on August 22, 2007;

   b)     One check, for $50,000, which was to be held by Laurel for deposit until August, 31, 2007; and

   c)     One check, for $50,000, which was to be held by Laurel for deposit until September 14, 2007.

61.     The post-dated checks were issued by Defendant Cioffi and Defendant MSL Productions to represent certain definite future payments to Plaintiff Laurel.  Defendant Cioffi, in writing these checks, represented that MSL Productions would have enough money in its bank account to cover them on August 31, 2007 and September 14, 2007, respectively.

62.     In fact, Defendant Cioffi had no intention of covering the two $50,000 checks and directed that they checks be cancelled within days after they were issued.

63.     Instead of paying Laurel, between August 21, 2007 and September 14, 2007, MSL Productions paid over $235,000 to its credit card accounts to support MSL Sports and Gridiron Bash.

14

64.     In reliance on Defendant Cioffi's representation that he would provide the $80,000 check, to be deposited on August 22, 2007, and the two post-dated $50,000 checks, to be deposited on August 31, 2007 and September 14, 2007, Laurel shipped additional products to MSL Productions' clients.

65.     Defendant Cioffi also offered Plaintiff Laurel another project (the Scholastic II project), provided that the Scholastic II project would not be affected "in the event that the payments [for outstanding balances on other projects] are not exactly what you would prefer at the time."

66.     On or about August 30, 2007, Plaintiff Laurel contacted Defendant MSL Productions' bank to verify availability of funds.  MSL Productions' bank told Plaintiff Laurel that there were insufficient funds available in MSL Productions' account to cover either of the checks.  MSL Productions' bank would not advise Plaintiff Laurel if stop-payments had been issued.

67.     When Plaintiff Laurel found out that there were insufficient funds in Defendant MSL Productions' bank account to cover the first $50,000 check, Plaintiff Laurel repeatedly called Defendant Cioffi regarding the availability of funds to cover it.

68.     On September 12, 2007, Defendant Cioffi and representatives of Plaintiff Laurel met with JNY.  Defendant Cioffi told JNY's representative that all future payments due and owing for the project should be paid directly to Plaintiff Laurel.  Defendant Cioffi also told JNY's representative that shipments for the 9W project would not be delayed because the Defendant MSL Productions would make good on its debt to Plaintiff Laurel.

69.     In the parking lot after the meeting with JNY, Defendant Cioffi represented to Plaintiff Laurel that he would forward all monies thereafter due and received from JNY directly

to Plaintiff Laurel to pay Defendant MSL Productions' outstanding balance.  Defendant Cioffi acknowledged that he did not have available funds at the time to cover the two $50,000 checks previously described in Paragraph 16.  Defendant Cioffi represented to Plaintiff Laurel that he would issue Laurel another check within the next week for $50,000 to begin to pay down the existing debt MSL Productions owed Plaintiff Laurel, and the parties would agree to handle the 9W account and would agree to allocate commissions.

70.     In reliance on these representations, Plaintiff Laurel released product for JNY projects that were being held as a result of MSL Productions' unpaid balance.

71.     Despite receiving $36,502.12 in the month of September 2007 from JNY and Comcast, on September 19, 2007, Defendant Cioffi sent Laurel an email advising it that MSL Productions sent Laurel a check for only $12,000 on September 24, 2007.  This was the last payment MSL Productions ever made to Laurel.

72.     In the September 19, 2007 email, Defendant Cioffi finally admitted that he cancelled the two $50,000 post-dated checks so that he would not have a check bounce for insufficient funds.  Defendant Cioffi also represented that Plaintiff Laurel would receive between $80,000 and $110,000 from JNY by the following week.

73.     JNY never made another payment to MSL.

74.     Between September 19, 2007 and October 12, 2007, MSL Productions received $24,677.00 from Comcast for goods shipped by Laurel, but MSL Productions never paid Laurel for these products.

75.     As of October 12, 2007, MSL Productions owed Laurel $547,296.76.

130731.00601/50416461v.1

76.    On October 1, 2007, Cioffi emailed Laurel and advised that MSL Productions was finalizing all the billing and that he would do all he could to get Laurel $50,000 that week, and thanked Laurel "for all your cooperation and trust."

77.    On October 12, 2007, Plaintiff Laurel emailed Defendant Cioffi, asking why there had still been no resolution on MSL Productions' outstanding balance, as Plaintiff Laurel had not received any funds from JNY or directly from MSL Productions.

78.    On October 23, 2007, Cioffi emailed Laurel and advised that MSL Productions was "finalizing all billing to 9W today" and that it was going to ask for payment by that Friday.

79.    Plaintiff Laurel continued its attempts to contact Defendant Cioffi to determine whether MSL Productions would pay the amount owed to Plaintiff Laurel for all of the MSL Productions' projects.

80.    Since September 24, 2007, Plaintiff Laurel received no money directly from Defendant MSL Productions for the remainder of MSL Productions' outstanding balance.

81.    Plaintiff Laurel is currently owed $449,135.80 for products it manufactured and shipped for MSL Productions, as follows:

| Date | Invoice No. | Client | Price (U.S. Dollars) |
|------|-------------|--------|----------------------|
| 5/17/2007 | 17061 | JNY | $ 38,450.29 |
| 5/18/2007 | 17076 | JNY | $ 370,697.00 |
| 5/18/2007 | 17083 | JNY | $ 2,590.00 |
| 6/8/2007 | 17223 | JNY | $ 411.00 |
| 7/17/2007 | 17585 | Comcast | $ 10,367.80 |
| 7/17/2007 | 17592 | JNY | $ 123.21 |
| 8/16/2007 | 17907 | JNY | $ 21,916.00 |
| 8/16/2007 | 17910 | Comcast | $ 4,580.50 |

## COUNT ONE

### ACTION FOR PRICE

82.     The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

83.     In accordance with the agreed upon terms of the contract, Laurel provided services and products to MSL Productions.

84.     Plaintiff Laurel did not receive payment for those services and products.

85.     Plaintiff Laurel made numerous subsequent agreements with MSL Productions to payback the money owed on all of MSL Productions' projects.

86.     Defendant MSL Productions has breached the terms of its initial and subsequent agreements with Plaintiff Laurel and has yet to make good on its outstanding balance.

87.     The total price owed by Defendant MSL Productions for the services delivered is $449,135.80.

88.     Defendant MSL Productions is liable to Laurel pursuant to N.J.S.A. § 12A:2-709(1)(a) for the price of the goods accepted.

WHEREFORE, Plaintiff Laurel demands judgment against Defendant MSL Productions, LLC for the price of the services Laurel has provided for all of MSL Productions' projects, totaling $449,135.80, incidental damages, attorney's fees, costs of suit, and such other relief as may be appropriate under the circumstances.

## COUNT TWO

### ACCOUNT STATED

89.     The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

90.     Plaintiff Laurel demanded payment from MSL Productions in the form of invoices totaling $449,135.80.

91.     Defendant MSL Productions never disputed the value of the services as stated on the invoices.

92.     Although demanded, MSL Productions has paid no part of the sums stated on the invoices.

WHEREFORE, Plaintiff Laurel demands judgment against Defendant MSL Productions for the price of the invoices totaling $449,135.80, incidental damages, attorney's fees, costs of suit, and such other relief as may be appropriate under the circumstances.

## COUNT **THREE**

### COMMON LAW FRAUD

#### (AGAINST DEFENDANT CIOFFI AND DEFENDANT MSL PRODUCTIONS)

93.     The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

94.     Defendants MSL Productions and Cioffi fraudulently made material misrepresentations of facts to Plaintiff Laurel, fraudulently promised Laurel payment which they never intended to fulfill, and fraudulently issued checks to Laurel that Cioffi quickly cancelled in order to induce Laurel to ship more products to MSL Productions' customers.

95.     Plaintiff Laurel reasonably and justifiably relied on these material misrepresentations by releasing products for other MSL Productions projects.

96.     Plaintiff Laurel suffered damages based on MSL Productions' and Cioffi's fraudulent conduct.

WHEREFORE, Plaintiff Laurel demands judgment against Defendants Cioffi and MSL Productions for damages in excess of $449,135.80 and punitive damages, together with interest, costs, attorney's fees and such other relief as this Court deems equitable and proper.

<u>COUNT FOUR</u>

ALTER EGO / VEIL PIERCING/ DE FACTO MERGER

<u>(AGAINST ALL DEFENDANTS)</u>

97.     The allegations in the above paragraphs are incorporated by reference as though set forth at length herein.

98.     Defendant Cioffi is a self proclaimed "leader in the creative and production arenas." Defendant Cioffi established and operated MSL Productions, MSL Sports, and Union Square Sports and Entertainment, Inc.

99.     Defendant MSL Productions was a marketing and event management company, which is no longer in business.

100.    Defendant MSL Sports was initially held out as a division of MSL Productions.

101.    Defendant MSL Productions paid for expenses to establish the property known as Gridiron Bash, and Gridiron Bash was initially held out as a property of MSL Productions.

102.    In late 2007, after MSL Sports and Gridiron Bash became their legal entities, MSL Productions' assets in MSL Sports and Gridiron Bash were transferred to MSL Sports and Gridiron Bash without fair value being paid to MSL Productions.

103.    In or around 2009, Gridiron Bash was transferred to Defendant Union Square Sports and Entertainment, Inc. without fair value being paid to MSL Sports.

104.    In or around 2009, USSE Corp. bought Union Square Sports and Entertainment, Inc.

105.    MSL Productions, MSL Sports, and the USSE Defendants operate the same line of business.  MSL Productions branded itself as "build[ing] and develop[ing] cutting-edge entertainment properties with the purpose of connecting consumers, brands and media."  MSL Sports branded itself as "build[ing] and develop[ing] cutting-edge sports and entertainment properties with the purpose of connecting consumers, brands and media."  USSE Corp. brands itself as "producing turn key entertainment based large scale events with an emphasis on college sports."

106.    There was a continuity of business operations between MSL Productions, MSL Sports, and the USSE Defendants.

107.    MSL Sports, MSL Productions, and the USSE Defendants were or are primarily owned and controlled by Defendant Cioffi.

108.    Defendant Cioffi was the majority shareholder and President of MSL Productions; the majority shareholder and CEO of MSL Sports; and is currently the CEO of the USSE Defendants.

109.    Defendant Cioffi exercised control over the affairs of MSL Productions and MSL Sports, and exercises control over the affairs of the USSE Defendants.

110.    Defendant Cioffi also personally guaranteed MSL Productions' line of credit.

111.    Ultimately, Cioffi closed MSL Productions and reformed its business into MSL Sports, in part, to thwart the MSL Productions' legitimate debts.

112.    Income and payments made to MSL Productions were used to operate MSL Sports or fund MSL Sports' projects.

113.   In addition to commingling finances, MSL Productions and MSL Sports simultaneously shared employees, and the USSE Defendants share many of the same employees as MSL Productions and MSL Sports.

114.   Defendant Cioffi intermingled his assets with those of MSL Productions and MSL Sports.

115.   MSL Productions, MSL Sports, and the USSE Defendants all operated, and currently operate, from the same principal place of business -- 24 32 Union Square East, New York, New York 10003.

116.   MSL Productions, MSL Sports, and the USSE Defendants all shared business ideas and property.

117.   At Cioffi's direction, MSL Productions, MSL Sports, and the USSE Defendants, failed to observe corporate formalities in terms of behavior and documentation.

118.   MSL Productions', MSL Sports', and Union Square Sports and Entertainment, Inc.'s corporate records are inaccurate, to the extent those records exist at all.

119.   MSL Productions, MSL Sports, MSL Combines, and the Gridiron Bash failed to maintain an arm's length relationship with one another.

120.   MSL Sports', MSL Productions', and the USSE Defendants' entity status are a mere formality. Defendant Cioffi directed that MSL Productions pay for expenses to establish MSL Sports and Gridiron Bash and otherwise intermingled and manipulated their respective assets and liabilities.

121.   Defendants Gary Cioffi, MSL Sports, MSL Productions, and the USSE Defendants are alter egos or mere instrumentalities of one another.

122.    In the alternative, the transfer of MSL Productions' assets to MSL Sports, the transfer of MSL Sports' assets to Gridiron Bash, and the transfer of Gridiron Bash to USSE, Corp. constitute defacto mergers.

123.    To avoid an injustice, the corporate veil should be pierced and Cioffi, MSL Sports, and the USSE Defendants should be held liable for all claims against MSL Productions.

WHEREFORE, Plaintiff Laurel demands judgment against Defendants Cioffi, MSL Productions, MSL Sports and Entertainment, LLC, USSE Corp. and Union Square Sports and Entertainment, Inc., for damages in excess of $449,135.80 and punitive damages, together with interest, costs, attorney's fees and such other relief as this Court deems equitable and proper.

*/s/ Nicholas C. Harbist*
**BLANK ROME, LLP**
*A Pennsylvania LLP*
NICHOLAS C. HARBIST (NCH-7014)
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
(609) 750-2991 (phone)
(609) 897-7442 (fax)
harbist@blankrome.com
*Attorney for Plaintiff Medlaurel,Inc. d/b/a*
*Laurel Manufacturers, Inc.*

Dated: January 24, 2012

130731.00601/50416461v.1

CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I certify that the matter in controversy in this action is not the subject of any other action

pending in any Court, or of any pending arbitration or administrative proceeding.

                                        /s/ Nicholas C. Harbist
                                        **BLANK ROME LLP**
                                        *A Pennsylvania LLP*
                                        NICHOLAS C. HARBIST (NCH-7014)
                                        New Jersey Resident Partner
                                        301 Carnegie Center, 3rd Floor
                                        Princeton, NJ  08540
                                        (609) 750-2991 (phone)
                                        (609) 897-7442 (fax)
                                        *Plaintiff Medlaurel, Inc. d/b/a Laurel*
                                        *Manufacturers, Inc.*

Dated: January 24, 2012

130731.00601/50416461v.1